F  I  L  E  D

at____ O'clock &____ min____ M

AUG 0 5 2008

United States Bankruptcy Court
Columbia, South Carolina (25)

# UNITED STATES BANKRUPTCY COURT

## FOR THE DISTRICT OF SOUTH CAROLINA

ENTERED

AUG 0 5 2008

J.G.S.

| | |
|---|---|
| IN RE:<br><br>George Robert Namie,<br><br>         Debtor(s). | C/A No. 08-02192-JW<br><br>Chapter 13<br><br>**ORDER** |

This matter comes before the Court upon James M. Wyman's ("Trustee") objection to the confirmation of George Robert Namie's ("Debtor") chapter 13 plan. This Court has jurisdiction pursuant to 28 U.S.C. § 1334 and this is a core proceeding pursuant to 28 U.S.C. § 157(b)(2). Pursuant to Fed. R. Civ. P. 52, made applicable to this proceeding by Fed. R. Bankr. P. 7052, the Court makes the following Findings of Fact and Conclusions of Law.[1]

### FINDINGS OF FACT[2]

1. Debtor filed a petition for relief under chapter 13 of the Bankruptcy Code on April 11, 2008 and Trustee was appointed as the chapter 13 trustee for Debtor.

2. Debtor's income is above the median income for the State of South Carolina.

3. Prior to the petition date, Debtor and his non-filing wife bought a home, which is their principal residence.

4. Debtor and Trustee stipulate that the value of the home is approximately $500,000.00.

5. Debtor's mortgage creditor has filed a proof of claim in the amount of $501,935.94 and the arrearage on the claim exceeds $60,000.00.[3]

6. According to the proof of claim, Debtor's monthly payment for the home, not

---

[1] To the extent any of the Findings of Fact constitute Conclusions of Law, they are adopted as such. To the extent any of the Conclusions of Law constitute Findings of Fact, they are so adopted.

[2] Debtor and Trustee have stipulated to the majority of the Findings of Fact.

[3] Debtor and Trustee stipulate that they expect the mortgage creditor to file an amended claim with an arrearage amount of $62,941.91.

including the arrearage claim, is at least $4,271.54.

7.    Debtor's chapter 13 plan[4] (the "Plan") proposes to pay at least $1,105.00 per month to cure the arrearage claim resulting in Debtor paying at least $5,376.54 per month to maintain and cure the claim of his mortgage creditor.

8.    According to Debtor's Statement of Current Monthly Income, the Internal Revenue Service's guidelines allow $942.00 per month for mortgage related housing expenses in Debtor's county of residence.

9.    The combined net monthly income of Debtor and his non-filing spouse is $7,216.03.

10.    Debtor's scheduled unsecured debt exceeds $50,000.00.

11.    Debtor's plan proposes to pay a 1% dividend to general unsecured creditors over a fifty-seven (57) month period.

12.    Debtor's plan proposes to devote nearly 75% of Debtor's disposable household income to maintaining and curing his mortgage payment.  Debtor's housing expense under the Plan exceeds his personal net income of $4,695.03 per month.

13.    Trustee opposes confirmation pursuant to 11 U.S.C. § 1325(a)(3) and (b).  Debtor asserts that retention of the home is in good faith since it was acquired during a time when Debtor was earning sufficient income to make the mortgage payment and that Trustee may not object to the debt payment on the home even though the payment exceeds the minimum allowed under the means test of 11 U.S.C. § 1325(b).

## ISSUE

May Debtor use the vast majority of his disposable income in this case to maintain his current residence while proposing to pay a small payment to unsecured creditors?

---

[4]    For purposes of this Order, the Court refers to the amended chapter 13 plan filed June 19, 2008.

## CONCLUSIONS OF LAW

Debtor bears the burden of proof at confirmation. See In re Utsey, C/A No. 02-08676-W, slip op. (Bankr. D. S.C. Oct. 4, 2002). Notwithstanding the test formulated under 11 U.S.C. § 1325(b), a debtor must propose a plan in good faith pursuant to 11 U.S.C. § 1325(a)(3). See In re Edmunds, 350 B.R. 636, 648 (Bankr. D.S.C. 2006). Fourth Circuit case law requires the Court to consider the totality of the circumstances to determine whether "there as been an abuse of the provisions, purpose, or spirit of Chapter 13 in the proposal or plan." Neufeld v. Freeman, 794 F.2d 149, 152 (4th Cir. 1986). The good faith inquiry is fluid in that no single factor is dispositive on the issue of good faith and the Court will not simply count the factors weighing for or against Debtor to determine good faith or lack thereof. See In re Solomon, 67 F.3d 1128, 1134 (4th Cir. 1995). Without setting forth a complete list of factors, the Fourth Circuit has indicated that the proposed percentage to unsecured creditors is one factor that the Court may consider and, considering all factors, the Court finds this factor pivotal under the circumstances of this case. See Deans v. O'Donnell, 692 F.2d 968, 972 (4th Cir. 1982).

The parties have stipulated that there is no equity in the home and that it would require significant expense, representing the vast majority of Debtors' disposable income, to retain it. In fact, the payment dedicated for the home exceeds Debtor's personal net income. Utilization of the vast majority of Debtor's net disposable income to retain an expensive asset while depriving his other creditors of payment indicates a lack of good faith. This Court has previously denied confirmation for lack of good faith when a debtor proposes to retain an expensive piece of secured property and make a minimum distribution to unsecured creditors. See In re Allawas, No. 07-06058-hb, slip op. (Bankr. D.S.C. Mar. 3, 2008) (denying confirmation, despite the use of exempt social security income, for lack of good faith where debtor proposed to retain an expensive motorcycle as a second vehicle). Moreover, the Plan provides for inconsistent

3

treatment of similarly situated creditors in that it would allow an apparently undersecured

mortgage creditor to receive a full cure of its undersecured claim while other unsecured creditors

receive a *de minimis* payment.

Though Debtor may have acquired the home during more prosperous times, it is apparent

that the expense associated with the home led to Debtor's current need to seek relief in this Court

to cure a debt that he can no longer afford. See In re Rice, 72 B.R. 311, 313 (D.Del. 1987)

(holding a debtor should not be able to retain a home, the spoils of an "imprudent purchase," to

the detriment of unsecured creditors); In re Leone, 292 B.R. 243, 245 (Bankr. W.D. Pa. 2003)

(holding debtors must bear the burden of paying for improvident expenses by giving up a home

that had no equity and finding replacement housing). Debtor presented no testimony or other

evidence that alternative housing, suitable for a family of two, cannot be found at a lesser cost.

The Court also notes that Debtor's mortgage related expenses, including the arrearage claim, are

more than five times the standard housing expenses allowed for individuals in Debtor's area.

Debtor proposes only a minimum repayment to unsecured creditors when he could afford to pay

a significant distribution by finding housing at a more reasonable cost. See In re Kitson, 65 B.R.

615, 622 (Bankr. E.D.N.C. 1986) (denying confirmation, in part, based upon excessive housing

expenses and holding a "chapter 13 debtor who proposes to pay his creditors 38 cents on the

dollar cannot expect to 'go first class' when 'coach' is available"). Considering all of the Deans

factors and the totality of the circumstances, the Court finds, in this case, that Debtor's retention

of a home that consumes all of his personal net disposable income, to the detriment of his

significant number of unsecured creditors, is not in good faith. See In re Loper, 367 B.R. 660,

669-70 (Bankr. D. Colo. 2007) (holding debtors who devoted two-thirds of their net disposable

income to housing expenses did not propose a chapter 13 plan in good faith).

Trustee also contends that Debtor's Plan fails to meet the means test of 11 U.S.C. § 1325(b).  Debtor argues that the Court may not consider the amount of his actual housing expenses in determining whether he meets the requirements of the means test.[5]  However, as discussed in Napier, though 11 U.S.C. § 1325(b)(3) allows for the categorical deduction of certain actual expenses, those expenses must be "reasonably necessary" regardless of whether Debtor is above the median income.  See In re Napier, C/A No. 06-2464-W, slip op. (Bankr. D.S.C. Sept. 18, 2006).  "The focus of inquiry under the 'reasonably necessary' test is to ensure that a debtor is not maintaining an excessive lifestyle to the detriment of unsecured creditors." Loper, 367 B.R. at 665.  "Even non-discretionary expenditures such as for food and shelter can reflect discretionary lifestyle choices." In re Gonzales, 157 B.R. 604, 608 (Bankr. E.D. Mich. 1993).  Debtor bears the ultimate burden of proving that the claimed "actual expense," as allowed by the means test, is actual, reasonable, and necessary.  See In re Barnes, 378 B.R. 774, 777 (Bankr. D.S.C. 2007) (discussing the debtor's burden of proof).

Debtor has offered no convincing evidence that the proposed housing expense is reasonably necessary for a family of two under the circumstances of this case.  See In re Kaminski, 387 B.R. 190 (Bankr. N.D. Ohio. 2008) (finding in a chapter 7 case that "[w]hether a debtor's shelter is adequate-as opposed to excessive, thereby constituting an impermissible expense-depends on the reasonableness of the expenditure" and holding an expense that was twice the standard housing expense was excessive).  Though the Court is unwilling to create a bright-line rule for determining when expenses above the standard allowed expenses are reasonably necessary, the mortgage expense at issue, when compared with Debtor's income, exceeds the expenses allowed by many bankruptcy courts that have considered the issue.  See

---

[5]    In argument, Debtor refers to a Congressional policy of providing preference to secured creditors through the means test and a Congressional desire to fix the mortgage crisis by reducing foreclosures.  However, the means test specifically allows unsecured creditors and the Trustee the right to object and put debtors to their burden of proving that their housing and other expenses are reasonably necessary.

Loper, 367 B.R. at 666 (denying confirmation where debtors' housing expenses exceeded two-thirds their income); In re Talley, 389 B.R. 741 (Bankr. W.D. Wash. 2008) (finding a debtor's housing expense unreasonable in a chapter 7 case where it consumed 80% of his disposable net income); In re Nissly, 266 B.R. 717, 720 (Bankr. N.D. Iowa 2001) (denying confirmation where debtors' housing expenses exceeded 20% of their monthly income); Kitson, 65 B.R. at 616 (denying confirmation of a plan that devoted 27% of debtor's income to housing expenses); In re Baird, 2005 WL 612863 at *2 (Bankr. E.D. Iowa Mar. 10, 2005) (denying confirmation where a plan devoted 28% of debtors' monthly income to their mortgage payment).  No evidence was presented that demonstrates Debtor's mortgage expense is reasonably necessary.  As in Wolf, Debtor's housing expense is more than five times that allowed by the I.R.S. and is not reasonable or necessary considering Debtor's family size, income level, location, and lack of other special needs.  See In re Wolf, C/A No. 07-06119-D, slip op., 2008 WL 2117156, *5 (Bankr.D.S.C. May 16, 2008) (dismissing a chapter 7 case for abuse); Kaminski, 387 B.R. at 193 (discussing factors to be considered in determining whether a housing expense is excessive).

Based upon the foregoing, the Court sustains Trustee's objection to the confirmation of Debtor's Plan and denies confirmation of Debtor's Plan.  Debtor shall propose an amended chapter 13 plan within ten (10) days from the entry of this Order or this case may be dismissed or converted on motion of the Trustee.

**AND IT IS SO ORDERED.**

UNITED STATES BANKRUPTCY JUDGE

Columbia, South Carolina
August 5, 2008